UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MEZA, | No. 2:20-cv-2316 JAM KJN P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| MICHAEL PALLARES, | |
| Respondent. | |

Petitioner, a state prisoner, proceeds pro se with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed a motion to dismiss this action alleging the petition was filed beyond the one-year statute of limitations. Petitioner filed an opposition; respondent did not file a reply. As set forth below, the undersigned recommends that the motion be granted.

I. Motion to Dismiss

    A. Standards Governing Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court. . . ." Id. The Court of Appeals for the Ninth Circuit has referred to a respondent's motion to dismiss as a request for the court to dismiss under Rule 4 of the Rules Governing § 2254 Cases. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420

1

(1991). Accordingly, the court reviews respondent's motion to dismiss pursuant to its authority under Rule 4.

II. Statute of Limitations

A. Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became law on April 24, 1996, imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. This statute of limitations provides that:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody, pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244 (d)(1).[1]

B. Chronology

For purposes of the statute of limitations analysis, the relevant chronology of this case is as follows:

1. Petitioner was convicted in the Sacramento County Superior Court of false imprisonment and various sex offenses against a child, and was sentenced on April 8, 2011, to an indeterminate state prison term of 42 years-to-life. (ECF No. 10-1.)

////

---

[1] As set forth above, the limitations period may begin running later under certain specified circumstances, 28 U.S.C. § 2244(d)(1)(B), (C), & (D); none of these circumstances apply here.

2. Petitioner filed an appeal. On July 19, 2012, the California Court of Appeal for the Third Appellate District reduced the felony false imprisonment conviction to misdemeanor false imprisonment and remanded for resentencing, but otherwise affirmed the judgment. (ECF No. 10-2 at 2.)

3. Petitioner sought review in the California Supreme Court, which was denied on September 26, 2012. (ECF Nos. 10-3, 10-4.)

4. On November 14, 2012, petitioner was resentenced. The Sacramento County Superior Court noted that petitioner's April 8, 2011 sentence remained as imposed with the following exceptions: the false imprisonment conviction was deemed a misdemeanor, the prior felony false imprisonment conviction was vacated, and petitioner was sentenced to one year for misdemeanor false imprisonment, and such sentence was stayed. (ECF No. 10-5.)

5. Petitioner did not appeal the new sentence.

6. Following his resentencing, petitioner did not file any post-conviction collateral actions in state court.

7. On November 5, 2020, petitioner constructively filed the instant federal petition. See Rule 3(d) of the Federal Rules Governing Section 2254 Cases.

C. Calculation of Limitations Period

For purposes of calculating the limitations period in this case, § 2244(d)(1)(A) applies. Petitioner was resentenced on November 14, 2012. Because petitioner did not file an appeal, the judgment became final on January 14, 2013.[2] Cal. R. Ct. 8.38(a); Stancle v. Clay, 692 F.3d 948, 951 (9th Cir. 2012). The limitations period began the next day, January 15, 2013. Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (the AEDPA limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)). Thus, the one-year limitation period commenced on January 15, 2013, and, absent tolling, expired on January 15, 2014.

---

[2] Sixty days after the resentencing was January 13, 2013, which fell on a Sunday. Accordingly, the time for seeking review was extended to the next business day. See Cal. R. Ct. 1.10(a) ("The time in which any act provided by these rules is to be performed is computed by excluding the first day and including the last, unless the last day is a Saturday, Sunday, or other legal holiday, and then it is also excluded.").

D. Statutory Tolling

Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C. § 2244(d)(2).  A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations.  Artuz v. Bennett, 531 U.S. 4, 8 (2000).

State habeas petitions filed after the one-year statute of limitations expired do not revive the statute of limitations and have no tolling effect.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001).

Here, petitioner filed no state post-conviction collateral actions before the limitations period expired, and therefore is not entitled to any statutory tolling.  Rather, the federal limitations period expired on January 15, 2014.  Petitioner did not file the instant petition until November 5, 2020, exceeding the limitations period by over six years and nine months.  Thus, absent equitable tolling, this action is time-barred.

III.  Equitable Tolling

Petitioner does not claim his petition was timely, but rather seeks equitable tolling.

A.  Petitioner's Arguments - Petition

Petitioner argues he is entitled to equitable tolling because of the following circumstances he claims are extraordinary and beyond his control:

1. Petitioner is only semi-literate, with a 6.2 reading TABE score (sixth grade reading level). (ECF No. 1 at 20.)

2. Petitioner had difficulty maintaining his legal materials:  (a) prison officials lost petitioner's legal materials when he was transferred out to court in 2013; petitioner did not know about the deadline until appellate counsel advised him of the deadline after the deadline had passed; (b) following an assault by a cellmate due to petitioner's sex offender status, petitioner's legal materials were distributed to other inmates on the tier and lost a second time (no dates

////

4

provided); (c) finally, in August 2020, petitioner secured a third set of his legal materials, after diligently attempting to obtain them earlier. (ECF No. 1 at 20.)

      3. While petitioner had his legal paperwork in his cell, he feared for his life due to his sex offender conviction; his sex offender status interfered with his ability to obtain inmate assistance and to access the law library due to sex offender animosity and potential violence. (ECF No. 1 at 21-22.)

      4. Petitioner suffered restrictions due to COVID-19, confined in the modified program since February 2020, with no law library access, just walk-up copies and legal supplies. (ECF No. 1 at 22-23.)

Petitioner further contends that he is entitled to an evidentiary hearing to determine whether extraordinary circumstances warrant equitable tolling "due to potential for violence or death from inmates who harbor deep resentment toward sex offenders." (ECF No. 1 at 15, 23.)[3]

Petitioner provided his own declaration, as well as the declaration of inmate Stan Solvey who assisted petitioner in filing this action. (ECF No. 1 at 32-38.)

    B. Respondent's Arguments

Respondent counters that the circumstances described by petitioner are not extraordinary and were not the cause of his untimeliness. (ECF No. 9 at 3.) First, the assessment of petitioner's reading ability in 2016 does not prove that his reading level is an extraordinary circumstance that prevented him from timely filing his federal petition for over six years. (ECF No. 9 at 4.) In addition, respondent points out that the well-written federal petition and declaration show petitioner has sufficient reading and writing skills; the record reflects petitioner wrote his attorney numerous times about the appellate record (ECF No. 1 at 20), wrote the clerk of court (ECF No. 1 at 48), and submitted written requests to prison officials for the return of his paperwork and legal documents (ECF No. 1 at 52-61).

////

---

[3] Petitioner also stated that if he is granted equitable tolling, he will "only raise 1 of the 4 exhausted claims, the Miranda violation." (ECF No. 1 at 19.) However, the petition that was filed only raises one claim -- the Miranda violation.

5

Second, petitioner did not provide the date he obtained the first replacement documents, but it appears the documents were likely sent to petitioner again on January 15, 2013, just two days after the limitations period began. (ECF No. 9 at 6, citing ECF No. 1 at 42-45.) Appellate counsel advised petitioner to tell the court about the missing documents. (ECF No. 1 at 45.) Nevertheless, that petitioner may have been without his legal materials for a short period at the beginning of the limitations period does not rise to the level of an extraordinary circumstance warranting equitable tolling. In addition, petitioner's sole claim in his federal petition is that his conviction was obtained in violation of the privilege against self-incrimination, the same claim he raised on direct appeal. Thus, once he received his legal materials, petitioner failed to explain the over six-year delay in bringing that same claim. Petitioner fails to show he was diligent throughout the limitation period. Smith v. Davis, 953 f.3d 582 (9th Cir. 2020).

Third, petitioner's difficulties in obtaining inmate assistance due to the sensitive nature of his crimes are unavailing in light of multiple authorities to the contrary. (ECF No. 9 at 5.)

Finally, petitioner's reliance on COVID-19 restrictions is unavailing because state restrictions due to COVID-19 did not occur until March of 2020, over six years after the limitation period expired on January 13, 2014.

    C.   Petitioner's Opposition to Motion to Dismiss

In his supporting declaration, petitioner claims that the documents provided with his opposition will demonstrate the delay he sustained in accessing his legal property. Petitioner reiterates that he has no education skills to evaluate the law, and seeks an evidentiary hearing to hear from CCI Webb (ad seg counselor) as to petitioner's unanswered requests for his property; CCI Gonzalez (building counselor) as to the unanswered letters and requests; Edwin Valencia (inmate at Pleasant Valley State Prison ("PVSP") as to the disposition of the federal habeas corpus petition Mr. Valencia completed for petitioner and the appellate record and the dates involved; and the appellate attorneys as to why they did not respond to petitioner's request for a third set of replacement legal documents. (ECF No. 19 at 1-2.)

In an attached handwritten document, petitioner reiterates that his conviction causes him constant fear for his safety while in prison, and his low grade level makes him incompetent to

pursue his habeas claims. (ECF No. 19 at 24-25.) Petitioner returned from being out to court for resentencing on November 18, 2012, but did not receive his stored property at that time. (ECF No. 19 at 26.) Despite repeated requests, petitioner's property was not returned. Petitioner sent another request on February 7, 2013. (ECF No. 19 at 29.)

Meanwhile, petitioner found an inmate (Edwin Valencia) who would help prepare the federal habeas petition. But on February 20, 2013, petitioner was placed in ad seg and his property was then packed. Mr. Valencia called petitioner's aunt, who wrote petitioner to tell him Mr. Valencia would still work on the petition, but they had to do so by writing to and from petitioner's aunt. Petitioner continued requesting his legal property, but never received a response. (ECF No. 19 at 30.) Mr. Valencia wrote again, informing petitioner that Mr. Valencia finished the habeas petition and dropped petitioner's legal work off in a yard at 2 Building Counselor (Mr. Gonzales). Petitioner would have to write another request to Mr. Gonzales to have the materials delivered to ASU Counselor Webb so petitioner could get the papers as soon as possible and file the habeas petition. (ECF No. 19 at 31-32.)

In addition, in response to attorney Kotler's letter, petitioner wrote the federal defender for assistance, but the federal defender responded that their office could not assist unless appointed petitioner's counsel. (ECF No. 19 at 33-34.)

"Almost eight months went by." (ECF No. 19 at 34.) Mr. Webb "came to the door and appointed me to meet with committee." (Id.) Petitioner saw the committee, and after he was sent to D yard, petitioner finally received his property, but papers were missing. (ECF No. 19 at 34.) When petitioner was transferred from PVSP, petitioner asked for his legal documents to be sent to his aunt so petitioner's case could be looked over by a criminal lawyer "before the deadline ended." (ECF No. 19 at 35.) However, the documents never arrived at his aunt's home. (ECF No. 19 at 35, 37.)

When petitioner arrived at Kern Valley State Prison ("KVSP"), he had no legal property. Eventually, petitioner saw a notice on the dayroom wall that inmate Stan Solvery was a legal worker. (ECF No. 19 at 39.) Time passed, and petitioner told his sister about Solvery, and petitioner's sister encouraged petitioner to talk with Solvery. (ECF No. 19 at 40-41.) Initially,

Solvery wanted to look into the case before deciding whether to help petitioner. Solvery explained equitable tolling, and that it would be a problem of how many years had passed since the deadline expired. (ECF No. 19 at 41.) Petitioner saw his request forms for the return of his legal property as extraordinary circumstances, and was "being oppressed by the court's thinking that [he] knew law." (ECF No. 19 at 42.) Petitioner contends his request forms demonstrate that PVSP staff withheld petitioner's legal property the entire time petitioner went out to court on November 13, 2012; then after February 20, 2013, to November 7, 2013, while petitioner was in ad seg. (ECF No. 19 at 43.) He contends his legal property was unlawfully held in storage for "approximately 1 year." (ECF No. 19 at 46.)

### D. Petitioner's Exhibits

Petitioner's exhibits (petition and opposition) are listed in chronological order below:

August 22, 2012 letter to petitioner at PVSP from appellate counsel Kotler providing a copy of the petition for review she was mailing to the California Supreme Court that day; advising petitioner that any federal petition must be filed within one year and 90 days from the ruling on the petition for review; and providing the address of the U.S. District Court. (ECF No. 1 at 42-43.)

October 26, 2012 letter from attorney Kotler sending petitioner another copy of the petition for review, the order of the CA Supreme Court denying review (September 26, 2012), opinion of the Court of Appeal, and her August 22, 2012 letter re deadlines. (ECF No. 1 at 44.) Ms. Kotler warned petitioner she could not continue to send duplicate copies.

**2013**

First page of January **15**, 2013 letter from Balin & Kotler, stating they received petitioner's January 6, 2013 letter, and advising that petitioner had now missed the deadline for filing his federal habeas petition and suggesting that petitioner "attempt to file the habeas petition and ask the federal district court for equitable tolling of the deadline."[4] (ECF No. 1 at 45; 19 at 20.) Counsel would also contact the federal public defender, explain what took place, and see

---

[4] Petitioner did not provide a copy of any additional pages or the signature page for a letter dated January **15**, 2013. (Id.)

8

whether they would assist petitioner. If they would not, counsel provided the standards for equitable tolling, and recommended petitioner include such argument in his federal petition, along with a declaration explaining what petitioner told counsel. (Id.) Counsel noted they were returning to petitioner his inmate request to include with his habeas petition. (Id.)

Page two of a January **16**, 2013 letter from attorney Eileen S. Kotler: "I hope you move quickly to get this resolved because the federal district court will consider the efforts you made to take care of this problem." (ECF No. 19 at 5.)

On January 21, 2013, while petitioner was housed at PVSP A2-101, petitioner submitted a CDCR 22 form stating it had been two months since petitioner returned from out to court when all of his legal property was put into storage by Building 2 staff, and now Building 2 staff claimed R&R had petitioner's stored property and R&R claims Building 2 had the stored property. (ECF No. 1 at 53; 19 at 16.) Petitioner wrote that he had legal filing deadlines and had submitted more than several requests for release of his property and the non-delivery was interfering with such filings. (Id.) On January 21, 2013, staff member J. Andrade forwarded the request to Building 2 staff, but no further response is on the form. (Id.)

On February 5, 2013, still housed in A2-101, petitioner submitted a CDCR 22 writing that it had been three months since he returned from court and still had not received his legal papers back from storage, and asked to check into this matter, noting "Need immediately!" (ECF No. 1 at 54; ECF No. 19 at 17.) Staff noted the CDCR 22 form was received and forwarded to CCI on February 6, 2013. (Id.) No further staff response is noted.

On February 7, 2013, still housed in A2-101, petitioner submitted a CDCR 22 again noting his legal deadline and requesting the release of his legal property for appeal deadline; staff received the form and forwarded it to R&R supervisory staff on February 7, 2013. (ECF No. 1 at 55; ECF No. 19 at 18.) No further staff response is noted.

February 20, 2013 rules violation report, resulting in petitioner's placement in the administrative segregation unit ("ad seg" or "ASU"). (ECF No. 19 at 7-8.)

////

////

An inmate property inventory receipt dated February 20, 2013, for property stored due to petitioner's placement in ad seg.[5] (ECF No. 19 at 22.)

First page of a March 28, 2013 letter from federal defender (responding to petitioner's "recent letter") advising petitioner that the federal defender cannot represent individuals unless appointed by a federal court. (ECF No. 1 at 51.) Advised petitioner that he can file a motion for appointment of counsel with his federal petition, or any time after he filed his federal petition, and provided petitioner with three forms, including a petition for writ of habeas corpus. (Id.)

On August 7, 2013, while housed in ad seg (ASU 8-177), petitioner signed a CDCR form asking Counselor Webb whether anyone dropped off legal papers for petitioner at A yard. (ECF No. 1 at 58; 19 at 10.) No staff delivery or response is noted, although "(Counselor) Staff Webb" is handwritten in the "if forwarded to" box. (Id.)

Petitioner provided another CDCR 22 form while housed in ASU C-129, but both the date and text are illegible. (ECF No. 1 at 59; 19 at 13.) No staff delivery or response is noted. (Id.)

On September 29, 2013, while housed in ASU/C-129, petitioner completed a CDCR 22 form noting petitioner would be transferred to Kern Valley State Prison and asked Counselor Gonzalez to have petitioner's legal documents and transcripts sent there or, if Gonzalez had the legal materials "right now" have them sent as soon as possible. (ECF No. 1 at 56, 60; ECF No. 19 at 11, 14.) Staff Counselor Webb responded on September 30, 2013: "Your paperwork was placed in your ASU property on 9/27/13." (Id.)

On September 29, 2013, petitioner completed a CDCR 22 form directed to Counselor Gonzalez, stating petitioner had left his original documents and transcripts for inmate Valencia, who was supposed to help finish the habeas petition, and inquired whether Gonzalez had the documents. Although the delivery box appears marked, there is no staff signature or date. (ECF No. 1 at 61; 19 at 12.) "A Yard Staff Counselor Gonzalez" is handwritten in the "if forwarded" to box, but there is no date or method marked. (Id.)

---

[5] The cover page claims "Bed Assignments of Ronald Meza from 8-29-12 to 12-10-14 indicating when he was in ad seg and transferred," but the only document appended was the property receipt. (ECF No. 19 at 21-22.)

10

**2019**

An August 22, 2019 second level appeal response noting he had a reading grade point level above 4.0. (ECF No. 19 at 4.)

**2020**

Rehabilitative Case Plan, dated April 8, 2020, reflecting TABE reading score 6.2; math 7.1. (ECF No. 1 at 39.) No high school diploma or GED. (Id.)

July 29, 2020 letter from attorney William Balin, forwarding to petitioner "briefs from computer files" of Ms. Kotler, now retired and inactive. (ECF No. 1 at 46.) Mr. Balin noted that in 2012, Ms. Kotler advised petitioner to first file a petition for a writ of habeas corpus and then, as part of that petition, to ask the court to appoint an attorney to assist in any further habeas proceedings. (ECF No. 1 at 46.) Mr. Balin noted that petitioner first asked the federal defender to assist petitioner before petitioner filed his petition, but Balin informed petitioner that he must first file the petition, and ask the court to appoint the federal defender. (ECF No. 1 at 47.) Mr. Balin reminded petitioner that there are strict time deadlines for filing a federal habeas petition, and because his appeal ended in 2012, counsel suspected that the deadline had expired. (ECF No. 1 at 47.) Mr. Balin recommended that petitioner seek the advice of a different attorney to see if the deadline could be extended, or if petitioner could establish factual innocence. (ECF No. 1 at 47.)

On October 19, 2020, petitioner wrote a letter to the U.S. District Court, E.D. Cal. (Fresno Div.) seeking forms for filing a habeas petition and a request to proceed in forma pauperis. (ECF No. 1 at 48.)

E. Governing Standards

A habeas petitioner is entitled to equitable tolling of the one-year statute of limitations only if the petitioner shows: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). A petitioner must have "been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as

11

well, up to the time of filing his claim in federal court." Smith v. Davis, 953 F.3d 582, 599 (9th Cir.), cert. denied, 141 S. Ct. 878 (2020). In other words, "[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999) (citations omitted). "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" Holland, 560 U.S. at 653 (internal citations and some quotation marks omitted).

Extraordinary circumstances need not be an "*actual* impossibility; rather, equitable tolling is appropriate where 'it would have technically been possible for a prisoner to file a petition, but a prisoner would have likely been unable to do so.'" Grant v. Swarthout, 862 F.3d 914, 918 (9th Cir. 2017) (quoting Gibbs v. Legrand, 767 F.3d 879, 888 (9th Cir. 2014)). That said, equitable tolling should be applied sparingly. See Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) ("To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity. . . ."). Petitioner must "show that that the 'extraordinary circumstances' were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (quoting Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003) ("petitioner entitled to equitable tolling 'since prison officials' misconduct proximately caused the late filing.'") "[I]t is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy." Davis, 953 F.3d at 600; see also Menominee Indian Tribe of Wis. v. United States, 577 U.S. 250, 257 (2016) (Such circumstance must be "both extraordinary *and* beyond [the petitioner's] control.").

Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005). "A habeas petitioner . . . should receive an evidentiary hearing when he makes 'a good-faith *allegation that would, if true*, entitle him to equitable tolling.'" Roy v. Lampert, 465 F.3d 964, 969 (9th Cir. 2006) (emphasis added in Roy) (quoting Laws v. Lamarque, 351 F.3d 919, 921 (9th Cir. 2003)).

////

////

F.  Discussion

The undersigned finds that petitioner failed to meet his burden, for the following reasons.

1. Access to Legal Materials

Petitioner contends he had difficulty maintaining his legal materials at different times: (a) prison officials lost his legal paperwork while he was transferred out to court, and withheld while housed in ad seg; (b) when petitioner transferred from PVSP (on an unidentified date), petitioner's legal materials were mailed to his aunt, but never arrived; (c) subsequently, on another unidentified date when petitioner was assaulted, petitioner's legal materials were distributed to other inmates on the tier and lost a second time; (d) in August 2020, petitioner secured a third set of his legal materials, after diligently attempting to obtain them earlier.

a. 2012-2013

Petitioner was resentenced on November 14, 2012, and returned from court to PVSP on November 18, 2012, prior to the beginning of the federal limitations period. Petitioner does not make clear on what date he first received his legal materials, but at some point he received his legal materials because while he was awaiting their return, he found an inmate (Edwin Valencia) to help petitioner organize the habeas corpus writ. Indeed, petitioner acknowledges that he received a letter from Mr. Valencia who had finished the habeas writ and dropped it off in A Yard to Counselor Gonzalez. (ECF No. 19 at 31.) Petitioner's CDCR 22 form confirms that on September 29, 2013, petitioner sought return of the "legal materials and transcripts" that Mr. Valencia had dropped off. (ECF No. 19 at 14.) Staff responded that the materials were placed in petitioner's ad seg property on September 27, 2013. ECF No. 1 at 56, 60; ECF No. 19 at 11, 14.)

The limitations period began to run on January 15, 2013. It appears petitioner did not have his property on February 7, 2013, because he wrote a CDCR 22 seeking its return, and the request was routed by prison staff. On February 20, 2013, petitioner was placed in ad seg, and petitioner maintains that he was deprived of his legal property while he was in ad seg. In his opposition, petitioner clarified that he was housed in ad seg from February 20, 2013, to November 7, 2013 (ECF No. 19 at 43), just over eight and a half months. Petitioner received his property after his release from ad seg and transfer to D yard, but "papers came up missing 28

13

U.S.C. § 2254." (ECF No. 19 at 35-36.) Petitioner did not provide the date he transferred away from PVSP.

It appears petitioner had his legal materials at some point early in the limitations period, after his return from court, and before he was put in ad seg, because he was able to provide Mr. Valencia with transcripts referenced in petitioner's CDCR 22 form. Petitioner also had some of his legal property after his release from ad seg, prior to his transfer to KVSP.

Petitioner's failure to provide specific dates makes it difficult to calculate the time remaining on the limitations clock. Moreover, the involvement of Edwin Valencia in preparing petitioner's writ calls into question petitioner's claim that his legal materials were withheld or lost by prison officials. In addition, it appears petitioner wrote to the federal defender while housed in ad seg. On the other hand, the failure of prison officials to respond to any of petitioner's CDCR 22 forms is equally concerning. But, as explained below, no evidentiary hearing concerning such matters is required because even if petitioner was deprived of his legal materials while he was housed in ad seg, the record fails to demonstrate petitioner was diligent once he was released from ad seg. "[I]t is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." Davis, 953 F.3d at 599. Despite his release from ad seg on November 7, 2013, petitioner fails to set forth what efforts he made after such release to file his federal petition. At that time, petitioner still had until January 15, 2014, in which to file the federal petition.

Moreover, despite appellate counsel's early notice about the statute of limitations deadline, of which petitioner concedes he was aware (ECF No. 11 at 33), and then subsequent advice that petitioner file a federal habeas petition, and act quickly, petitioner instead chose to contact the federal defender. Then, once petitioner was to be transferred, rather than file a federal habeas petition (having been twice warned about the limitations period), petitioner opted to mail his legal materials to his aunt purportedly so that a lawyer could review the documents. Petitioner could have had the legal materials forwarded to KVSP so that he could then file his federal petition. Such choices fail to demonstrate reasonable diligence.

14

Thus, even assuming the court found that the deprivation of legal materials during petitioner's housing in ad seg constituted an extraordinary circumstance, and that his multiple CDCR 22 forms demonstrated his diligence during such period, and granted equitable tolling for an entire year, such tolling is insufficient because petitioner did not file his federal petition until November 5, 2020. Such lengthy delay fails to meet the required diligence prong.

### b. No Demonstrated Diligence Following Release from Ad Seg

Petitioner also contends that he was assaulted and he lost his legal materials a second time. But he does not indicate when or where such assault occurred, or when the documents were lost. Moreover, he claims that, after diligently attempting to obtain them earlier, he did not secure a third set of his legal materials until sometime in August 2020, but he provided no facts or evidence to demonstrate his diligence since his release from ad seg at PVSP or following his transfer to KVSP. Indeed, petitioner fails to specifically demonstrate he was diligent from 2014 to February 2, 2020, when he wrote appellate counsel. He claims appellate counsel delayed sending petitioner the additional materials, but provided no copies of letters sent or received in connection with any request prior to February 2, 2020. Rather, he provided a letter dated July 29, 2020, responding to petitioner's letter of February 2, 2020, and such letter made no mention of any prior request. (ECF No. 1 at 46.) Such vague and conclusory allegations are insufficient to demonstrate petitioner's diligence following his release from ad seg at PVSP.

Petitioner's additional contentions about not having his legal materials following his transfer to KVSP are also unavailing. Unless a petitioner is raising a sufficiency of the evidence claim, which petitioner is not, "petitioners are not required by 28 U.S.C. § 2254 or the Rules Governing § 2254 Cases to attach to their petitions, or to file separately, state-court records." Pliler v. Ford, 542 U.S. 225, 232 (2004). Petitioner's sole claim was that his Miranda rights were violated when he was placed in the patrol car. Aside from his personal knowledge of the facts surrounding such claim, this was the same claim petitioner pursued on direct appeal. (ECF No. 10-4.) Petitioner fails to explain why he could not present such claim when he had possession of his legal materials, or after his transfer to KVSP.

////

                    2. <u>Sensitive Nature of Underlying Conviction</u>

Petitioner strenuously argues that his conviction and sex offender status entitle him to equitable tolling due to the risk of physical harm, including death, if other inmates discover such information. He contends that the "inmate population's animosity to sex offenders is a unique issue not published in precedent, and is a prevailing problem" in state prisons. (ECF No. 1 at 18.) He argues that this is a "unique extraordinary circumstance that is the ultimate hardship as it deflates a petitioner's diligence in preparing and timely filing" a petition. (ECF No. 1 at 22.)

Respondent contends that petitioner's difficulties in obtaining inmate assistance due to the sensitive nature of his crimes are unavailing in light of multiple authorities to the contrary. (ECF No. 9 at 5) (citing multiple district court cases).

Petitioner is correct that there are no published cases addressing petitioner's argument. However, one unpublished Ninth Circuit case rejected the prisoner's claim that he was entitled to equitable tolling because "he feared accessing materials from the prison's library because of his status as a sex offender." <u>Bunyard v. Knowles</u>, 119 F. App'x 172 (9th Cir. 2005) (finding Bunyard "failed to identify any specific threats he faced that prevented him from using the law library in the prison.") District courts, including this one, have found that a prisoner's "status as a sex offender, and in turn his fear of other prisoners due to that status, is not an extraordinary circumstance that justifies equitable tolling." <u>Mendoza v. Pollard</u>, 2021 WL 2588155, at *6 (S.D. Cal. June 24, 2021) (collecting cases). Another district court noted that there is no exception for sex offenders in 28 U.S.C. § 2244, and that the prisoner's "decision to remain silent about his case demonstrates a lack of diligence and precludes a finding of diligence." <u>Zavala v. Diaz</u>, 2013 WL 440638, at *3 (C.D. Cal. Jan. 25, 2013) (citations omitted).

Here, as in <u>Bunyard</u>, petitioner articulated no specific threats based on his sex offender status; rather, he identifies fear based on the inmate population's animosity to sex offenders. Petitioner seeks equitable tolling based solely on his underlying conviction and sex offender status. The undersigned is persuaded that the nature of petitioner's underlying conviction does not constitute an extraordinary circumstance warranting the application of equitable tolling. <u>Mendoza</u>, 2021 WL 2588155, at *6.

### 3. Lack of Inmate Assistance or Law Library Access

Petitioner contends that while he had his legal paperwork in his cell, his sex offender status interfered with his ability to obtain inmate assistance and to access the law library due to sex offender animosity and potential violence. But petitioner is not entitled to equitable tolling merely because he needed to rely on the assistance of another inmate. Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010) (finding petitioner's pro se status and reliance on inmate helpers not to be extraordinary circumstances justifying equitable tolling); Martinez v. Ryan, 133 F. App'x 382, 382-83 (9th Cir. 2005) (limited education, reliance on other prisoners to file petition, and lack of access to legal materials and assistance due to custody status do not constitute extraordinary circumstances); De Adams v. Hedgpeth, 2015 WL 114163, at *5 (C.D. Cal. Jan. 7, 2015) ("as a matter of law, petitioner's need to rely on [a fellow inmate] does not constitute an extraordinary circumstance for purposes of equitable tolling"). Petitioner's circumstances are similar to those of the majority of incarcerated prisoners attempting to file habeas petitions. His inability to access inmate assistance or the law library is not an extraordinary circumstance preventing petitioner from preparing a pro se habeas petition.

### 4. Limited Education/Ignorance of the Law

Petitioner contends he is entitled to equitable tolling because he is only semi-literate, with a 6.2 reading TABE score (sixth grade reading level). Such claim is also unavailing. See Baker v. Cal. Dep't of Corr., 484 F. App'x 130, 131 (9th Cir. 2012) ("Low literacy levels, lack of legal knowledge, and need for some assistance to prepare a habeas petition are not extraordinary circumstances to warrant equitable tolling of an untimely habeas petition."); Payne v. Valenzuela, 2016 WL 304294, at *1 (C.D. Cal. Jan. 25, 2016) (finding prisoner's lack of legal sophistication and limited ability to read and write are not extraordinary circumstances for equitable tolling.). Even an inmate's illiteracy is insufficient. Beltran v. Foulk, 2015 WL 1268322, at *3 (C.D. Cal. March 16, 2015) ("A prisoner's weak educational background or lack of literacy is not enough to establish an extraordinary circumstance"); Jimenez v. Hartley, 2010 WL 5598521, at *5 (C.D. Cal. Dec. 6, 2010) (allegations that petitioner was uneducated, illiterate, and indigent insufficient to warrant equitable tolling), adopted 2011 WL 164536 (C.D. Cal. Jan. 13, 2011); cf. Hughes v.

17

Idaho State Bd. Of Corr., 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy and pro se status insufficient cause to avoid procedural default). As argued by respondent, the record reflects petitioner's ability to write letters both to the court and to his appellate counsel, as well as multiple CDCR 22 forms. In light of such evidence, as well as the cited authorities, petitioner fails to demonstrate how his low reading score prevented him from earlier filing his petition.

Petitioner also argues he is entitled to equitable tolling because he "did not know about the deadline until appellate counsel advised him of the deadline after the deadline had passed," (ECF No. 1 at 20), apparently referring to counsel's January 15, 2013 letter. Such argument fails to acknowledge counsel's August 22, 2012 letter advising petitioner that any federal petition must be filed within one year and 90 days from the ruling on the petition for review (ECF No. 1 at 42), as well as his own declaration attesting to such knowledge (ECF No. 1 at 33 ¶ 13). But in any event, it is well established that a prisoner's ignorance or confusion about the law is not an extraordinary circumstance and does not equitably toll the limitations period. See Ford v. Pliler, 590 F.3d 782, 789 (9th Cir. 2009) (the petitioner's confusion or ignorance of the law does not satisfy the extraordinary circumstance standard), cert. denied, 562 U.S. 843 (2010); Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("A pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling.").

### 5. COVID-19 Restrictions

Finally, petitioner's reliance on COVID-19 restrictions is unavailing because COVID-19 was not identified or confirmed until early 2020, long after the limitations period expired. The California Department of Public Health first announced two confirmed cases of the novel coronavirus in California on January 26, 2020.[6][7] On March 19, 2020, as a result of the threat of

---

[6] <https://www.cdph.ca.gov/Programs/OPA/Pages/NR20-001.aspx> accessed October 8, 2021.

[7] The court may judicially notice a fact not subject to reasonable dispute because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is proper for public records whose accuracy is not in dispute. See Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("[A court] may take judicial notice of records and reports of administrative bodies." (internal quotation marks omitted)); United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) (same).

COVID-19, Governor Newsom issued an executive order ordering all individuals living in the State of California to stay home or at their place of residence.[8]  Because the statute of limitations expired on January 15, 2014, any restrictions imposed on petitioner as a result of COVID-19 could not have impacted his timely filing.

### G. Conclusion

The limitations period expired on January 15, 2014, yet petitioner failed to file the instant petition until November 5, 2020, and failed to demonstrate that he was diligent throughout the limitations period.  Davis, 953 F.3d at 582.  Respondent's motion to dismiss should be granted, and petitioner's motion for an evidentiary hearing be denied.

## IV. Recommendations

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's motion for an evidentiary hearing (ECF Nos. 1, 19) be denied;

2. Respondent's motion to dismiss (ECF No. 9) be granted; and

3. This action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  Where, as here, a habeas petition is dismissed on procedural grounds, a certificate of appealability "should issue . . . if the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim for the denial of a constitutional right, and [2] that jurists

---

[8] Cal. Exec. Order N-33-20 (Mar. 19, 2020), <https://www.gov.ca.gov/2020/03/19/governor-gavin-newsom-issues-stay-at-home-order/>, accessed October 13, 2021.

of reason would find it debatable whether the district court was correct in its procedural ruling." Petrocelli v. Angelone, 248 F.3d 877, 883-84 (9th Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 478 (2000)).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 22, 2021

/meza2316.mtd.hc.sol

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE