1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RONALD MEZA,                                No.  2:20-cv-2316 DAD CSK P

12                     Petitioner,

13        v.                                     FINDINGS & RECOMMENDATIONS

14   CHRISTIAN PFEIFFER, Warden,                 (ECF No. 40)

15                     Respondent.

16

17        Petitioner is a state prisoner proceeding pro se.  Petitioner's motion to vacate judgment is

18   before the Court.  Fed. R. Civ. P. 60(b).  As discussed below, it is recommended that the motion

19   be denied.

20   I.       BACKGROUND

21        1.  On March 10, 2011, petitioner was convicted in the Sacramento County Superior Court

22   of false imprisonment and various sex offenses against a child, and on April 8, 2011, was

23   sentenced to an indeterminate state prison term of 42 years-to-life.  (ECF No. 10-1.)

24        2.  Petitioner filed an appeal.  On July 19, 2012, the California Court of Appeal for the

25   Third Appellate District reduced the felony false imprisonment conviction to misdemeanor false

26   imprisonment and remanded for resentencing, but otherwise affirmed the judgment.  (ECF No.

27   10-2 at 2.)

28        3.  Petitioner sought review in the California Supreme Court, which was denied on

1

1   September 26, 2012.  (ECF Nos. 10-3, 10-4.)

2        4.  On November 14, 2012, petitioner was resentenced.  The Sacramento County Superior

3   Court noted that petitioner's April 8, 2011 sentence remained as imposed with the following

4   exceptions:  the false imprisonment conviction was deemed a misdemeanor, the prior felony false

5   imprisonment conviction was vacated, and petitioner was sentenced to one year for misdemeanor

6   false imprisonment, and such sentence was stayed.  (ECF No. 10-5.)

7        5.  Petitioner did not appeal the new sentence, and following his resentencing, petitioner

8   did not file any post-conviction collateral actions in state court.

9        6.  On November 5, 2020, petitioner filed the instant federal petition.  (ECF No. 1.)

10  Petitioner argued that the statute of limitations period should be equitably tolled because

11  (a) petitioner is only semi-literate, with a sixth grade reading level (ECF No. 1 at 20);

12  (b) petitioner had difficulty maintaining his legal materials (id.); (c) while petitioner had his legal

13  paperwork in his cell, he feared for his life due to his sex offender conviction, which also

14  interfered with his ability to obtain inmate assistance and law library access (id. at 21-22); and

15  (d) since February 2020, petitioner suffered restrictions due to COVID-19 (id.).  Petitioner

16  included no claim to equitable tolling based on his mental health.

17       7.  On March 8, 2021, respondent filed a motion to dismiss and argued the petition should

18  be dismissed because it was filed over six years after the limitations period expired, and petitioner

19  failed to demonstrate he was entitled to equitable tolling.  (ECF No. 9.)  On March 30, 2021,

20  petitioner's first request for extension of time to oppose the motion was granted.  (ECF No. 15.)

21  On May 5, 2021, petitioner's second motion for extension of time was granted.  (ECF No. 17.)

22  When petitioner failed to file an opposition, on June 14, 2021, petitioner was ordered to show

23  cause why such failure should not be deemed a waiver of non-opposition to the motion.  (ECF

24  No. 18.)  On June 15, 2021, petitioner filed an opposition, but did not claim any mental health

25  issue entitled him to equitable tolling.  (ECF No. 19.)  Respondent did not file a reply.

26       8.  On October 22, 2021, the assigned magistrate judge found that petitioner failed to

27  demonstrate he was entitled to equitable tolling because the limitations period expired on January

28  15, 2014, yet petitioner failed to file the instant petition until November 5, 2020, and failed to

2

1   demonstrate that he was diligent throughout the limitations period and recommended that the

2   petition be dismissed as untimely.  (ECF No. 24 at 13-19.)

3          9.   Petitioner's objections were originally due within thirty days of the Court's October

4   22, 2021 findings and recommendations.  Petitioner sought four extensions of time to file

5   objections, which the Court granted (ECF Nos. 26, 28, 30, 32.)  On April 29, 2022, petitioner

6   filed objections in which he first claimed he was entitled to equitable tolling on the basis of his

7   mental health.  (ECF No. 35.)  Petitioner alleged that in 2014, he had a mental health crisis, was

8   admitted to a crisis bed but not released until 2016.  (Id. at 8.)  Petitioner claimed that he "remains

9   under CCCMS care and schizophrenic remission," and claimed that he gradually regained

10   "cognizance [sic] on or about 7/00/19."[1]  (Id. at 9.)  Petitioner provided two pages of health

11   records.  (Id. at 17-18.)

12         10.   On September 19, 2022, the district court adopted the findings and recommendations

13   over petitioner's objections, finding as follows:  (a) petitioner failed to provide mental health

14   records confirming his admission to a crisis bed, or his release therefrom, and his objections were

15   not verified or accompanied by a declaration; (b) petitioner failed to show how such mental health

16   condition, if present on December 6, 2014, kept him from diligently pursuing his habeas claims

17   before he was admitted to the crisis bed or after he was released; (c) the medical record reflecting

18   petitioner's Schizoaffective Disorder was in remission as of April 11, 2017, rebutted petitioner's

19   claim that he did not regain his mental health until July 2019; and (d) petitioner wholly failed to

20   address the April 11, 2017 to July 2019 time frame.  (ECF No. 38 at 3.)  Thus, even if petitioner

21   were released from a crisis bed on December 10, 2016, petitioner did not file his federal petition

22   until 2020, almost four years after the statute of limitations period expired.  (ECF No. 38 at 3-4.)

23   The district court dismissed the petition and entered judgment on September 20, 2022.  (ECF

24   Nos. 38, 39.)

25   

26   [1]  The Mental Health Services Delivery System ("MHSDS") Program Guide for the California Department of Corrections and Rehabilitation provides four levels of mental health care services:

27   Correctional Clinical Case Management System ("CCCMS"); Enhanced Outpatient ("EOP"); Mental Health Crisis Bed ("MHCB"); and inpatient hospital care.  Coleman v. Brown, 2013 WL

28   6491529, at *1 (E.D. Cal. Dec. 10, 2013).

1    11.  On January 29, 2024, petitioner filed a motion to vacate judgment under Rule 60(b) of

2    the Federal Rules of Civil Procedure.  (ECF No. 40.)  Respondent filed an opposition.  (ECF No.

3    44.)  Petitioner filed a reply.  (ECF No. 50.)

4    II.    LEGAL STANDARDS

5         Rule 60(b) provides for relief from a judgment or order on the following grounds:

6              (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly
               discovered evidence that, with reasonable diligence, could not have
7              been discovered in time to move for a new trial under Rule 59(b); (3)
               fraud (whether previously called intrinsic or extrinsic),
8              misrepresentation, or misconduct by an opposing party; (4) the
               judgment is void; (5) the judgment has been satisfied, released, or
9              discharged; it is based on an earlier judgment that has been reversed
               or vacated; or applying it prospectively is no longer equitable; or (6)
10             any other reason that justifies relief.

11   Fed. R. Civ. P. 60(b).  Petitioner's motion to vacate judgment is brought under Rule 60(b)(6).[2]

12   (ECF No. 40 at 30.)

13        Under Rule 60(b)(6). the moving party must show "extraordinary circumstances justifying

14   the reopening of a final judgment," see Gonzalez v. Crosby, 545 U.S. 524, 535 (2005), and the

15   motion must have been filed within a reasonable time.  Fed. R. Civ. P. 60(c)(1).  Rule 60(b)(6)

16   should be 'used sparingly as an equitable remedy to prevent manifest injustice.'"  Hall v. Haws,

17   861 F.3d 977, 987 (9th Cir. 2017) (quoting United States v. Alpine Land & Reservoir Co., 984

18   F.2d 1047, 1049 (9th Cir. 1993)).  To prevail, the moving party "must demonstrate both injury

19   and circumstances beyond his control that prevented him from proceeding with the action in a

20   proper fashion."  Harvest v. Castro, 531 F.3d 737, 749 (9th Cir. 2008) (internal citation and

21   quotations omitted).  "Such circumstances will rarely occur in the habeas context."  Gonzalez,

22   545 U.S. at 535.  Moreover, Local Rule 230(j) requires a party to show the "new or different facts

23   or circumstances claimed to exist which did not exist or were not shown upon such prior motion,

24   or what other grounds exist for the motion."  E.D. Cal. L.R. 230(j).

25   ///

26   ──────────────────────

27   [2]  Petitioner contends that he has met at least two other unidentified subsections of Rule 60(b)
     (ECF No. 40 at 30), but because the motion to vacate was filed more than fourteen months after
     the court entered final judgment, petitioner is not permitted to seek relief under Rule 60(b)(1), (2)
28   or (3).  Fed. R. Civ. P. 60(c).  Subsections (4) and (5) of Rule 60(b) are not applicable.

1   III.     THE PARTIES' ARGUMENTS

2          A.     Petitioner's Motion

3          Petitioner contends that because he is "mentally ill and incompetent," his motion to vacate

4   should be considered even though it was filed more than a year after judgment was entered.  (ECF

5   No. 40 at 30.)  Petitioner argues that he did not have the mental capabilities or the comprehension

6   to be held legally accountable for the statute of limitations because since childhood he has

7   suffered from mental health issues, has been diagnosed with "Schizoaffective Disorder, Bipolar

8   Type," medicated with various psychotropic drugs, and suffers from suicidal/homicidal ideations

9   and auditory/visual hallucinations."  (ECF No. 40 at 7.)  Petitioner argues that no one taking

10  psychotropic medications "can function normally."  (ECF No. 40 at 12.)  Petitioner obtained

11  S.S.I. benefits in 2002 based on his schizophrenia diagnosis.  (ECF No. 40 at 11, 65.)  In addition,

12  petitioner argues that his mental health issues have not been properly diagnosed, he has the

13  thinking capacity of a fifth grader, his mental health has deteriorated since 2012, and following

14  his assault in prison, he now also suffers from post traumatic stress syndrome ("PTSD").  (Id. at

15  8-9, 13, 16.)  Petitioner states that in 2014, he claimed all was well to avoid being placed in

16  isolation or on suicide watch, yet received rules infractions for possessing alcohol, which he used

17  to self-medicate.  (ECF No. 40 at 13.)  Petitioner claims that he is not required to attend GED

18  classes because of his inability to comprehend and complete even a sixth grade TABE score.

19  (ECF No. 40 at 15.)  He contends that his mental impairment keeps him from following simple

20  directions and instructions.  (ECF No. 40 at 17, 25.)  While petitioner is currently not taking

21  psychotropic medications, he "still displays radical behavior and is self-medicating, without

22  incident from any correctional officers."  (ECF No. 40 at 16.)

23         Petitioner denies that he wrote the federal petition or any of the letters referred to therein

24  and argues that he "cannot be held accountable for any false assertions made on his behalf by so

25  called 'legal litigators.'"  (ECF No. 40 at 18.)  He contends that he has been the victim of several

26  "jail-house lawyers" who just took plaintiff's money and failed to provide valid assistance.  (ECF

27  No. 40 at 21-25.)  Petitioner argues that the court "should not impute their malfeasance to

28  petitioner."  (ECF No. 40 at 21.)  Petitioner argues that the record demonstrates that petitioner is

5

mentally incompetent to "comprehend, [or] articulate, even a simple judicial form." (ECF No. 40 at 26.)

Finally, petitioner contends that due to petitioner's mental illness, the limitations period should be tolled through the filing of petitioner's motion to vacate judgment. (ECF No. 40 at 27-29.)

### 1.   Petitioner's Declaration

In his declaration, signed January 23, 2024, petitioner states that about two to three months prior, he was referred to his legal assistant by a friend. (ECF No. 40 at 34.) Petitioner was informed that the previous persons petitioner paid did not know what needed to be done to toll the statute of limitations. Petitioner states he is confused about the legal standard for this litigation and could not fill out judicial forms. Petitioner tried to get the Federal Defender's Office to help him. "Everyone was telling what to do, but I just cannot comprehend. That is why I dropped out of school, I am ashamed I cannot follow simple instructions." (Id.) Petitioner states that he read the "Due Diligence Statement" several times and believes it is accurate. "There are still things I do not understand and never will." (Id.) He avers that if any one had noticed that he was incapable of filling out a court form, his federal petition would have been timely filed, provided someone assisted him. (Id.)

### 2.   Ms. Bryant's Declaration

Petitioner also provided the declaration of his sister, Rhonda Bryant, attesting to his mental health issues beginning when petitioner was 16 and Ms. Bryant was 10. (ECF No. 40 at 47.) Ms. Bryant states that petitioner was mentally impaired, dropped out of high school, failed to get his GED, was paranoid, and at age 18, petitioner suffered a mental breakdown and was hospitalized for two weeks in a mental ward where he was diagnosed with schizophrenia. (Id.) Ms. Bryant avers that petitioner was able to have a seven year relationship with a girlfriend, but because of his mental issues and inability to hold a job, they broke up. During that relationship, the girlfriend handled all of the finances and other essential documents. After that split, petitioner was homeless for "quite some time," but eventually secured a job as a day laborer earning minimum wage. Ms. Bryant helped petitioner find a place to live, shopped for his groceries, and

1    managed all of petitioner's finances.  In 2002, petitioner applied to receive Social Security

2    benefits.  (Id.)  Eventually, petitioner moved in with his brother, Ricardo, and his wife, Maricela.

3    Petitioner worked side jobs with Ricardo, who was a commercial painter.  Both Ms. Bryant and

4    Ricardo experienced petitioner's lack of understanding and inability to follow simple instructions;

5    Ms. Bryant claims that petitioner's "understanding of how life works was limited."  (Id.)

6           Finally, petitioner also provided mental health and other records.  (ECF No. 40 at 36-214.)

7           B.      Respondent's Opposition

8           Respondent contends that petitioner failed to bring his Rule 60(b) motion within a

9    reasonable time and has not shown an extraordinary circumstance that warrants relief from the

10   judgment.  (ECF No. 44 at 4.)  Respondent points out that (1) petitioner's federal petition was

11   filed over six years late; (2) when the petition was filed in 2020, petitioner was aware the petition

12   was late and set forth four arguments in support of equitable tolling, none of which included his

13   mental health issues; (3) petitioner did not raise mental health issues until he did so in conclusory

14   fashion in his objections to the recommendations that the petition be dismissed as untimely;

15   (4) the district court rejected petitioner's objections, dismissed the petition as untimely, and

16   entered judgment in September 2022; and (5) now that the judgment has been final for well over a

17   year, petitioner seeks relief by again raising equitable tolling and submitting additional health

18   records.  Respondent argues that petitioner's evidence is not new and was not unknown to

19   petitioner before judgment was entered, and therefore his motion was unreasonably delayed and

20   fails to demonstrate extraordinary circumstances supporting relief under Rule 60(b).

21          Further, respondent argues that petitioner's reliance on Milam v. Harrington, 2018 WL

22   1155969 (C.D. Cal. Jan. 8, 2018) is unavailing because in Milam, the extraordinary circumstances

23   were that the prisoner's retained federal habeas counsel failed to defend against the motion to

24   dismiss for untimeliness by filing no opposition or objections, despite mental health evidence that

25   would have supported an equitable tolling argument.  (ECF No. 44 at 4-5.)  Respondent argues

26   that there were no such procedural defects in this case that would demonstrate extraordinary

27   circumstances.  (Id. at 5.)

28          Respondent contends the motion to vacate judgment should be denied as untimely and not

1   supported by extraordinary circumstances.

2              1.     Respondent Contends Additional Records Insufficient

3           Nevertheless, even if the Court considers petitioner's motion, respondent argues that

4   petitioner's additional records demonstrate that "petitioner's mental health impairments were not

5   so severe that he was unable to file a timely federal petition despite his diligence." (ECF No. 44

6   at 5.)

7              a.     Ms. Bryant's Declaration

8           First, respondent argues that Ms. Bryant's declaration does not show petitioner's mental

9   health status during the relevant limitations period January 15, 2013, through January 14, 2014.

10   Second, her declaration does not indicate on what basis petitioner received SSI payments.  Third,

11   because Ms. Bryant is related to petitioner, respondent contends the declaration is inherently

12   biased.  (Id. at 6) (citations omitted).  Finally, there is no evidence that Ms. Bryant has medical

13   expertise to opine as to petitioner's mental condition and does not have personal knowledge or

14   medical expertise to provide evidence as to petitioner's mental competence during the limitations

15   period.  (Id. at 7.)

16              b.     Petitioner's Additional Mental Health Records

17           Further, respondent points out that petitioner was not included in the mental health

18   treatment program until November 23, 2013 (ECF No. 40 at 52-53), at which time less than two

19   months remained in the limitations period.  (ECF No. 44 at 7.)  Respondent argues that petitioner

20   failed to demonstrate he was reasonably diligent throughout the limitations period, as required

21   under Smith v. Davis, 953 F.3d 582, 598-99 (9th Cir. 2020), and presented no evidence of mental

22   impairment or other extraordinary circumstance caused his untimeliness during that ten month

23   period.  (ECF No. 44 at 7.)  Further, respondent contends that the additional mental health records

24   do not show an extraordinary circumstance made it impossible for petitioner to file during the last

25   two months.  (Id.)   Petitioner was admitted into the mental health program on November 23,

26   2013, based on his claim he was suicidal, but he quickly expressed a safety concern based on his

27   sex offenses and "feigned being suicidal to secure a safe environment."  (Id. at 8) (citing ECF No.

28   40 at 57, 60-62, 68, 71, 75-76, 77.)  Respondent argues that these records demonstrate petitioner's

1   "propensity to exaggerate his circumstances to achieve a desired goal," and thus "his claim that

2   he was so mentally impaired that he was unable to timely file his federal petition should be

3   viewed with skepticism."  (ECF No. 44 at 8.)

4          Respondent claims that with the exception of a couple of days where petitioner's insight

5   and judgment were limited and his thought process was distracted, (a) petitioner's other cognitive

6   functions were within normal limits; (b) he was oriented and without hallucinations, delusions, or

7   psychosis, with linear, organized, and clear thoughts, and normal insight and judgment;

8   (c) petitioner reported his medication was working and he was doing fine; and (d) he was housed

9   in general population and included at the lowest level of psychiatric care, CCCMS.  (ECF No. 44

10  at 8) (citing ECF No. 40 at 52-79).  Respondent suspects that for the two days when petitioner's

11  insight and judgment were limited and his thought process was distracted it is possible that

12  petitioner exaggerated his symptoms to achieve his goal of being housed in a more protective

13  environment, or that mental health staff assessed him in that way because they discovered he was

14  using the mental health treatment program to secure a more protective environment.  (ECF No. 44

15  at 9.)  In any event, respondent argues that two days of such assessment does not excuse a federal

16  petition filed six years too late.  Further, respondent points out that the records show petitioner

17  had the ability to effectively communicate by writing during this period because he informed a

18  clinician that petitioner regularly wrote to his aunt and cousin (ECF No. 40 at 79).  (ECF No. 44

19  at 9.)

20         Respondent contends that the remainder of the mental health records provided by

21  petitioner are not relevant because they cover time periods after the limitations period expired.

22  (ECF No. 44 at 9) (citing ECF No. 40 at 78-214 (covering the period February 21, 2014 through

23  May 2, 2019).)  Further, respondent points out that petitioner provided no mental health records

24  for May 3, 2019, through November 5, 2020, the date the instant petition was filed, and therefore

25  petitioner failed to show he was mentally impaired for the eighteen months prior to the filing of

26  this action.  (ECF No. 44 at 9.)

27         Thus, respondent argues that the records provided by petitioner fail to demonstrate his

28  diligence, either throughout the running of the limitations period, or for the entire time it took

9

1     petitioner to file his federal petition.  (ECF No. 44 at 9) (citing <u>Smith</u>, 953 F.3d at 582 (finding

2     diligence required before, during and after the existence of an "extraordinary circumstance" in

3     order to determine whether the extraordinary circumstance actually prevented timely filing)).

4     Respondent contends that the two periods of inactivity by petitioner—the first ten months of the

5     limitations period and the eighteen months before he filed his federal petition—preclude

6     application of equitable tolling.  (ECF No. 44 at 9-10.)  Further, because petitioner pursues the

7     very claim he raised on direct appeal, respondent argues that there is no valid justification for the

8     lengthy delay.  (<u>Id.</u> at 10) (citations omitted).  Finally, respondent points out that the newly

9     submitted mental health records demonstrate that petitioner was housed in a mental health crisis

10     bed for a short period between December 6 through 10, 2014 (ECF No. 40 at 105) (outside the

11     limitations period), and not for the lengthy time he claimed in his objections to the findings and

12     recommendations (ECF No. 35 at 8-9).  Thus, respondent argues petitioner fails "to show the

13     Court's rejection of his mental health equitable tolling claim was error."  (ECF No. 44 at 10.)

14             2.      <u>Non-Mental Health Records Exhibit Petitioner's Ability to Self-Advocate</u>

15         Finally, respondent argues that the petition and its attachments demonstrate petitioner had

16     the ability to self-advocate.  (ECF No. 44 at 11.)  Respondent points to the following:

17     (a) Petitioner stated he wrote his attorney numerous times about the appellate record (ECF No. 1

18     at 20); (b) Before October 26, 2012 (three months before the limitations period began), petitioner

19     wrote appellate counsel asking for his assistance in filing a federal habeas petition and provided

20     counsel with forms (ECF No. 1 at 44); (c) On January 6, 2013 (nine days before the limitations

21     period began), petitioner wrote another letter to counsel; (d) During the limitations period,

22     petitioner wrote at least seven written requests to prison officials (ECF No. 1 at 53-61); (e) The

23     federal petition is well articulated, clear, neatly written, and includes an equitable tolling

24     argument with four stated reasons, demonstrating petitioner's ability to prepare and file his own

25     federal petition and declaration (ECF No. 1); and (f) Petitioner has written to the Clerk of Court

26     (ECF No. 1 at 48).  Respondent contends this demonstrates petitioner has not established his

27     mental health was so impaired it constitutes extraordinary circumstances that caused his late

28     federal petition despite his diligence.  (ECF No. 44 at 11.)

1          C.      Petitioner's Reply

2          Petitioner, through his new legal assistant, now claims that all of petitioner's legal

3  arguments to respondent's motion to dismiss were "frivolous and without merit," and petitioner

4  was unable to fully comprehend such deficiencies, and unable to comprehend the truth of his

5  assistant's claim that petitioner is well versed in the law.  (ECF No. 50 at 7-8.)  Petitioner avers

6  that he was not capable of writing the declaration submitted with the petition.  (Id. at 8.)

7  Petitioner cites Irwin v. Dept. of Veterans' Affairs, 498 U.S. 89, 96 (1990), to support his claim

8  that "even non-attorney[s] can create deception and fraud" to unsuspecting laypersons and cause

9  them to forfeit constitutional rights.  (ECF No. 50 at 8.)  Petitioner maintains he was "conned by

10 'jailhouse' litigators."  (Id. at 9.)  Petitioner denies he wrote the letters cited by respondent,

11 claiming petitioner "had assistance."  (Id. at 10.)  Petitioner did not write the federal petition, his

12 legal assistant did.  (Id.)

13         Petitioner argues that all of his medical records from 2010 to 2019 support his claim that

14 he is mentally impaired to a point where he cannot be held accountable for his late filings.  (Id. at

15 7.)  Petitioner contends that his sister's declaration shows that he "has been mentally impaired at

16 least one decade prior to his arrest and conviction."  (ECF No. 50 at 7.)  He points out that the

17 findings and recommendations confirmed petitioner filed no post-conviction challenges in state

18 court.  (Id.)  Petitioner argues that although petitioner's TABE reading score was 6.2 in 2016

19 (ECF No. 1 at 39), petitioner's TABE reading score was lower in 2012 (5.1).  (ECF No. 50 at 7)

20 (citing (ECF No. 40 at 49).  Petitioner argues his mental illness has progressed with age, and the

21 medical records support his condition.  (Id. at 8.)  Petitioner also contends that the CDCR "refuses

22 to diagnose petitioner's mental defects," instead "rely[ing] on a medical evaluation that is over a

23 decade old.  (Id.)  Petitioner explains that he received SSI payment "because he is impaired to a

24 point of being dysfunctional."  (Id.)  He quit going to "mental health" because all they did was

25 medicate him, and no therapy or counseling is provided unless you are in crisis mode.  (Id. at 10.)

26         Finally, petitioner argues that two Supreme Court cases fully support petitioner's

27 allegations.  (ECF No. 50 at 12) (citing Atkins v. Virginia, 536 U.S. 304 (2002); Matthews v.

28 Eldridge, 424 U.S. 319, 335 (1976)).  Petitioner contends mental illness and/or impairment give

                                              11

1    rise to equitable tolling.  (ECF No. 50 at 12) (citing <u>Trapp v. Spencer</u>, 479 F.3d 53, 62 (1st Cir.

2    2007); <u>Calderon v. United States District Court (Kelly)</u>, 163 F.3d 530 (9th Cir. 1998)).  Mental

3    illness is a justifiable excuse for untimely filing in federal court.  (ECF No. 50 at 12) (citing

4    <u>Harris v. Hutchinson</u>, 209 F.3d 325, 329 (4th Cir. 2000); <u>Smith v. McGinnis</u>, 208 F.3d 13, 17 (2d

5    Cir. 2000)).  Mental impairment has been considered an extraordinary circumstance beyond a

6    prisoner's control.  (ECF No. 50 at 12) (citing <u>Chesbro v. Idaho</u>, 190 F. App'x 538, 539 (9th Cir.

7    2006).  And petitioner again argues that <u>Milam</u>, 2018 WL 1155969, "completely supports [his]

8    plight of being mentally ill and illiterate."  (ECF No. 50 at 12.)

9    IV.     DISCUSSION

10       A.     <u>No Defect in Prior Federal Proceeding</u>

11       A proper Rule 60(b)(6) motion in a habeas action attacks "some defect in the integrity of

12    the federal habeas proceedings."  <u>Wood v. Ryan</u>, 759 F.3d 1117, 1120 (9th Cir. 2014).  Rule

13    60(b)(6) relief is meant to be case-specific, but there are factors that inform the analysis.  A party

14    seeking relief under Rule 60(b)(6) "must show 'extraordinary circumstances' justifying the

15    reopening of a final judgment."  <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 535 (2005).  Courts also

16    consider the petitioner's exercise of diligence, the interest in finality, delay between the finality of

17    the judgment and the Rule 60 motion, the connection between the extraordinary circumstance and

18    the judgment the movant wants reopened, and comity with state courts.  <u>Hall v. Haws</u>, 861 F.3d

19    977, 987 (9th Cir. 2017).  A district court's evaluation of those factors and grant of relief from

20    judgment is reviewed on appeal for abuse of discretion.  <u>Id.</u> at 984.

21       Circumstances warranting Rule 60 relief "occur rarely in the habeas context" and should

22    be found "sparingly as an equitable remedy to prevent manifest injustice."  <u>Hall</u>, 861 F.3d at 987.

23    The rule is ordinarily "to be utilized only where extraordinary circumstances prevented a party

24    from taking timely action to prevent or correct an erroneous judgment."  <u>United States v. Alpine</u>

25    <u>Land & Reservoir Co.</u>, 984 F.2d 1047, 1049 (9th Cir. 1993).

26       Petitioner claims that his former legal assistants or jailhouse lawyers rendered deficient

27    assistance, and conned petitioner out of his money.  Where other inmates fail to provide proper

28    legal assistance that results in an adverse ruling, including a finding that a habeas petition is

untimely, such actions generally do not provide grounds for equitable tolling.  <u>Wallace v. Mahanoy</u>, 2 F.4th 133, 150 (3d Cir. 2021) (rejecting petitioner's claim that he relied on the mistaken advice of a fellow inmate in reaching the incorrect conclusion that filing state postconviction relief proceedings would reset the federal deadlines; "erroneous legal advice is not a basis for invoking equitable tolling"); <u>Henderson v. Johnson</u>, 1 F. Supp. 2d 650, 655 (N.D. Tex. 1998) (equitable tolling not justified where fellow inmate, who claimed to be a lawyer and former law clerk to a federal judge, deceived prisoner by telling him that fellow inmate had prepared and filed a petition on prisoner's behalf and showed prisoner what appeared to be a filed-stamped copy of the petition); <u>Mendez v. Artuz</u>, 2000 WL 991336 (S.D.N.Y. 2000) (fellow inmate's inaccurate legal advice did not excuse prisoner from complying with statute of limitations); <u>cf.</u> <u>Tacho v. Martinez</u>, 862 F.2d 1376, 1381 (9th Cir. 1988) (reliance on allegedly incompetent jailhouse lawyer not cause for procedural default).

The Court is not persuaded that petitioner's prior legal assistants' involvement in pursuing habeas relief for petitioner resulted in a defect in the federal habeas proceedings.  The Court agrees with respondent that petitioner's reliance on <u>Milam</u>, 2018 WL 1155969, is unavailing because there were no procedural defects in this action that demonstrate extraordinary circumstances.

Indeed, contrary to petitioner's claim that his mental illness has worsened, the mental health records provided by petitioner demonstrate his psychotropic medications were discontinued on June 22, 2016.  (ECF No. 40 at 205.)  On January 12, 2017, petitioner's Schizoaffective Disorder, Bipolar Type, was noted to be in remission, and his Global Assessment

///

///

///

///

///

///

///

of Functioning ("GAF") [3]  was listed at 70.[4]  (ECF No. 40 at 205.)  While not definitive, at that

time a GAF score of 70 indicated "some mild symptoms (e.g., depressed mood and mild

insomnia) or some difficulty in social, occupational, or school function . . . but generally

functioning pretty well."  DSM IV-TR at 34.  On April 11, 2017, it was recommended that

petitioner be discharged from the mental health program because he was able to maintain stability

without psychotropic medications for over six months.  (ECF No. 40 at 206.)  Further, despite one

later incident in 2019, which required no change in petitioner's mental health treatment or

placement, petitioner was again returned to general population.  (ECF No. 40 at 219.)  Petitioner

concedes he achieved a 6.2 reading level in 2016.  (ECF No. 40 at 24.)

Petitioner's new legal assistant argues that petitioner is "mentally incompetent to

comprehend, articulate, and follow simple directions."  (ECF No. 40 at 25.)  But the record

reflects that petitioner was able to obtain assistance, even though petitioner's current legal

assistant disputes the quality of the assistance provided.  Despite that petitioner did not write the

federal petition and may not have written the letters to his appellate counsel, they demonstrate

---

[3]  "GAF" is an acronym for "Global Assessment of Functioning," a scale used by clinicians to assess an individual's overall level of functioning, including the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders with Text Revisions 34 (4th ed. 2004) ("DSM IV-TR").  A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school function (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.  Id.  A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers.)  Id.  A GAF of 41-50 indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning.  Id.  A GAF of 31-40 indicates:  "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)."  Id.  A GAF of 21-30 indicates:  "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  Id.

[4]  This further rebuts petitioner's claim in his objections that he did not regain his mental health until July of 2019.  (ECF No. 35 at 18; 38 at 3.)

1   petitioner's ability to seek and obtain assistance.  In addition, petitioner provided copies of

2   numerous administrative requests he submitted throughout 2013 (ECF No. 1 at 53-61), which also

3   demonstrate petitioner's ability to self-advocate, even while he was receiving mental health care

4   at the CCCMS level and taking psychotropic medications.  Further, the record reflects that on

5   February 21, 2014, petitioner reported he regularly wrote to his aunt and cousin, and on August

6   14, 2015, he was attending school daily, and denied he had problems concentrating in class.

7   (ECF No. 40 at 78, 167.)  Finally, by January 12, 2017, petitioner's GAF was 70, and his TABE

8   score was 6.2.  (ECF No. 40 at 205.)  None of the records provided by petitioner demonstrate that

9   petitioner's mental health status declined after January 12, 2017; rather, he was released from the

10  CDCR MHSDS on April 11, 2017, and is no longer taking psychotropic medications.

11        The motion to vacate was filed over a year and four months after judgment was entered.

12  The Ninth Circuit has repeatedly held that an unjustified delay of just two years between the entry

13  of judgment and the filing of a motion for relief is unreasonable.  See, e.g., Burton v. Spokane

14  Police Dept., 473 F. App'x 731 (9th Cir. 2012) (lapse of almost two years between judgment and

15  filing of 60(b)(6) motion was unreasonable); In re Hammer, 940 F.2d 524, 526 (9th Cir. 1991)

16  (bankruptcy court did not abuse discretion in concluding that unexcused two year delay before

17  filing motion for relief from default judgment was unreasonable); see also Morse-Starrett

18  Products Co. v. Steccone, 205 F.2d 244, 249 (9th Cir. 1953) (unexplained 22-month delay in

19  filing motion for relief was unreasonable).  As argued by respondent, petitioner did not bring his

20  motion for relief under Rule 60(b) within a reasonable time and does not demonstrate

21  extraordinary circumstances support his belated motion for relief from judgment.

22        The Court recommends that petitioner's motion to vacate judgment (ECF No. 40) be

23  denied.

24        B.      There Remains No Basis for Equitable Tolling

25        Even assuming, arguendo, that petitioner brought his motion within a reasonable time, the

26  records provided by petitioner fail to demonstrate, as discussed below, that petitioner's mental

27  health was so impaired throughout the limitations period that it constitutes extraordinary

28  circumstances that caused his late federal petition despite his diligence.

1            1.       Governing Standards

2          The Ninth Circuit has articulated a specific, two-part test for an equitable tolling claim

3    based on a petitioner's mental impairment:

4          (1) First, a petitioner must show his mental impairment was an
      "extraordinary circumstance" beyond his control by demonstrating

5          the impairment was so severe that either

6              (a) petitioner was unable to rationally or factually understand
          the need to timely file, or

7

8              (b) petitioner's mental state rendered him unable personally to
          prepare a habeas petition and effectuate its filing.

9          (2) Second, the petitioner must show diligence in pursuing the claims
      to the extent he could understand them, but that the mental

10         impairment made it impossible to meet the filing deadline under the
      totality of the circumstances, including reasonably available access

11         to assistance.

12   Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) (citations omitted) (italics in original).

13   "This reiterates the stringency of the overall equitable tolling test:  the mental impairment must be

14   so debilitating that it is the but-for cause of the delay, and even in cases of debilitating

15   impairment the petitioner must still demonstrate diligence."  Yow Ming Yeh v. Martel, 751 F.3d

16   1075, 1078 (9th Cir. 2014) (citing Bills, 628 F.3d at 1100).

17         The Ninth Circuit provided guidance for applying its two-part test:

18         [T]o evaluate whether a petitioner is entitled to equitable tolling, the
      district court must:  (1) find the petitioner has made a non-frivolous

19         showing that he had a severe mental impairment during the filing
      period that would entitle him to an evidentiary hearing;

20         (2) determine, after considering the record, whether the petitioner
      satisfied his burden that he was in fact mentally impaired;

21         (3) determine whether the petitioner's mental impairment made it
      impossible to timely file on his own; and (4) consider whether the

22         circumstances demonstrate the petitioner was otherwise diligent in
      attempting to comply with the filing requirements.

23

24   Bills, 628 F.3d at 1100-01.

25         A petitioner alleging a severe mental impairment during the filing period is not entitled to

26   an evidentiary hearing unless he or she makes "a good faith allegation that would, if true, entitle

27   him to equitable tolling."  Laws v. Lamarque, 351 F.3d 919, 921 (9th Cir. 2003) (remanding for

28   consideration of whether the petitioner's delayed filing was "attributable to psychiatric

medication which deprived Petitioner of any kind of consciousness" where the petitioner had

demonstrated "evidence of serious mental illness" by attaching prison psychiatric and medical

records); see Bills, 628 F.3d at 1099-1100 (remanding where the petitioner was in the lowest

percentile for verbal IQ, verbal comprehension and working memory, and, according to clinical

psychologists, was incapable of inferential thinking necessary to complete a federal habeas form);

see also Orthel v. Yates, 795 F.3d 935, 939-40 (9th Cir. 2015) ("Where the record is amply

developed, and where it indicates that the petitioner's mental incompetence was not so severe as

to cause the untimely filing of his habeas petition, a district court is not obligated to hold

evidentiary hearings to further develop the factual record, notwithstanding a petitioner's

allegations of mental incompetence.") (quoting Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir.

2010).)

### 2.    Newly Submitted Records

With his motion to vacate, petitioner provided the Court with additional mental health and

other records from the CDCR.  (ECF No. 40 at 49-214.)  Accordingly, the Court reviews the

records in detail to see whether or not they are sufficient, on their own, to indicate whether

petitioner's mental impairment was so severe as to be the but-for cause of the untimely filing of

his habeas petition.  Orthel, 795 F.3d at 939-40.  Although the limitations period is the focus of

petitioner's claim to equitable tolling, the Court also reviews the records preceding and following

the limitations period for context.

### a.    Records Prior to Incarceration

Petitioner provided the declaration of petitioner's sister, but respondent is correct that

there is no evidence that Ms. Bryant has the medical expertise necessary to comment on

petitioner's mental health issues.  However, she can attest to witnessing petitioner placed in a

mental ward at Sequoia Hospital in Redwood City when petitioner was 18.  (ECF No. 40 at 47.)

She knew petitioner, at age 19, had a seven year relationship with a girlfriend until they split.

After a period of homelessness, Ms. Bryant declared petitioner secured a job as a day laborer

earning minimum wage, and she helped him find a place to live, managed his finances and

grocery shopped for him.  By 2002, Ms. Bryant was still managing petitioner's finances, and he

17

1  applied for Social Security benefits.  At some point, petitioner moved in with his brother,

2  Ricardo, who was a commercial painter, and petitioner would work side jobs with Ricardo.

3  Petitioner lived with Ricardo until his arrest and incarceration in 2010.  (Id.)

4  Petitioner was represented by counsel at trial and on appeal.  (ECF No. 10.)  The limited

5  state court records submitted in support of respondent's motion to dismiss do not mention any

6  issues related to mental health, mental incompetency, illiteracy, or inability of petitioner to

7  comprehend.  (ECF Nos. 10-2 (state appellate court's July 19, 2012 decision affirming criminal

8  judgment), and 10-4 (petition for review).)

9  b.    Post Incarceration Records

10  Petitioner was incarcerated on April 19, 2011.[5]  Petitioner was not admitted to the CDCR

11  MHSDS until late 2013.

12  *During the Statute of Limitations Period:  Jan. 15, 2013 - Jan. 14, 2014*

13  On November 23, 2013, petitioner was seen for psychiatric evaluation.  (ECF No. 40 at

14  52.)  The psychiatrist diagnosed petitioner with Schizoaffective Disorder -- depressed, found his

15  thought process was distractible, his cognition was impaired, and his GAF was 23.  (Id. at 52-53.)

16  On November 25, 2013, petitioner was placed in the CCCMS level of care in the MHSDS, and by

17  then, his GAF was listed as 60, and he was prescribed psychotropic medication, and evaluated for

18  suicide risk, finding the risk was low.  (Id. at 55, 56-57.)  On December 2, 2013, petitioner denied

19  he was suicidal, and was recorded as stating "I said I was suicidal but I wasn't.".  (Id. at 76.)  On

20  December 31, 2013, petitioner was diagnosed with major depression, with a GAF of 65.  (Id. at

21  69.)  Petitioner was again classified as CCCMS, as he had a qualified mental disorder, his GAF

22  score was listed as 60, and he was prescribed psychotropic medication.  (Id. at 70.)  Petitioner's

23  Interdisciplinary Treatment Team ("IDTT") found petitioner's continued placement in CCCMS

24  was appropriate and he would "be removed from CCCMS when he is 6 months free of

25  ───────────────
[5]  This information was obtained from the CDCR Inmate Locator website,

26  https://apps.cdcr.ca.gov/ciris (accessed August 11, 2024).  Courts may take judicial notice of
public records available on online inmate locators.  See United States v. Basher, 629 F.3d 1161,

27  1165 (9th Cir. 2011) (taking judicial notice of Bureau of Prisons' inmate locator available to the
public); Foley v. Martz, 2018 WL 5111998, at *1 (S.D. Cal. Oct. 19, 2018) (taking judicial notice

28  of CDCR's inmate locator).

1    medication and [symptoms] of mental illness." (Id. at 71.)  He was prescribed Citalopram and

2    Depakote Geodon-Risperdal.  (Id.)

3        On January 3, 2014, petitioner reported that last November 2013 he was put on suicide

4    watch for two days and stated, "I told the doctor that there was a kite out there for a hit list, the

5    only way I could get out of there was to go suicidal.  [W]hen I was 18 I thought I was Jesus b/c of

6    some drugs." (Id. at 77.)  Petitioner claimed he had a history of "paranoia.  The meds are good

7    for controlling my mood swings." (Id.)  Petitioner "denie[d] any significant symptoms of

8    depression, mania, psychosis, or anxiety," and reported "good appetite, concentration [and]

9    energy." (Id.)  The psychiatrist found petitioner's thought process was goal directed without any

10   looseness of association or flight of ideas, his thought content included no perceptual disturbances

11   and no delusions, and his insight and judgment were good.  (Id.)

12                *After Expiration of the Statute of Limitations Period:  Post Jan. 14, 2014*

13       On February 21, 2014, the psychiatrist diagnosed petitioner with Schizoaffective Disorder,

14   and his GAF was listed as 50.  (Id. at 78.)  That same day, petitioner was seen by a clinical social

15   worker ("CSW"). (Id. at 79.)  Petitioner reported he was taking his medications and "they're

16   working." (Id.)  He claimed a history of hearing voices but could not state what the voices said;

17   he also reported history of depression and anxiety but did not report any major issues at that time.

18   (Id.)  Petitioner reported that "he maintains contact with his aunt and cousin and writes to them

19   regularly." (Id.)  The CSW found petitioner's "[t]hought content was free of bizarre and

20   delusional material, denied 'AH/VH' [auditory or visual hallucinations]."  The CSW noted

21   petitioner's diagnosis per the Mental Health Tracking System ("MHTS")[6] was "Adjustment

22   Disorder with Mixed Anxiety and Depression," and his GAF was listed as 60.  (Id.)  The CSW

23   noted they would continue to meet with petitioner on a quarterly or as needed basis.  (Id.)

24       On March 16, 2014, petitioner reported that "everything is under control.  My medication

25   is good." (Id. at 81.)  He denied mood swings, racing thoughts, and hallucinations.  (Id.)  His

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [6]  The CDCR used a web-based tool, the Mental Health Tracking System ("MHTS"), to "track
     clinical contacts, referrals, and other data related to the provision of mental health services."
28   Coleman v. Newsom, 424 F. Supp. 925, 942 (E.D. Cal. 2019).

TABE score was listed as 5.1.  (Id.)  On March 17, 2014, the CSW noted petitioner's diagnosis was listed as "Schizoaffective Disorder," with a GAF of 60.  (Id. at 84.)  Petitioner's "thought content was free of bizarre and delusional material, denied 'AH/VH.'  Thought process was clear and coherent."  (Id.)  On March 18, 2014, psychiatrist Dr. Humeid ordered and reviewed labs with petitioner.  (Id. at 87-88.)  On one progress note, Dr. Humeid diagnosed petitioner with Schizoaffective Disorder, current GAF of 62.  (Id. at 87.)  On a second progress note for the same day, Dr. Humeid diagnosed petitioner as having bipolar disorder, current GAF of 63.  (Id. at 88.)  On both forms, Dr. Humeid noted petitioner showed improvement and progress on current medications.  (Id. at 87-88.)  On March 26, 2014, petitioner reported that he takes his medication every day and "it helps.  I hear voices less than before.  I don't get mood swings.  I am not suicidal or homicidal."  (Id. at 86.)  The psychiatrist found petitioner's thought processes were goal directed, linear and logical and his thought content was well organized.  (Id.)  There was no suicidal ideation, and petitioner's insight and judgment were good; his TABE score was listed as 5.1.  (Id.)

On June 10, 2014, the CSW noted (per MHTS) petitioner was diagnosed with "Schizoaffective Disorder," GAF of 60, and his "thought content was free of bizarre and delusional material, denied 'AH/VH.'  Thought process was clear and coherent, judgment/insight: intact/ fair."  (Id. at 89.)  On July 8, 2014, petitioner reported "I take my meds, it helps.  I don't hear voices now.  I don't get mood swings now.  I am not suicidal or homicidal."  (Id. at 90.)  The psychiatry progress note reported that petitioner had no hallucinations or psychosis, his mood was stable, and his insight and judgment were good.  (Id.)  His TABE score was 5.1.  (Id.)

On July 14, 2014, petitioner received a rules violation report for refusing to provide a urine sample.  (Id. at 149, 181.)  Petitioner was seen on August 12, 2014, October 6, 2014, and October 20, 2014, and his diagnosis remained Schizoaffective disorder, GAF of 60 (per MHTS), and the CSW found petitioner's thought content to be free of bizarre and delusional material, petitioner denied having auditory or visual hallucinations, his thought process was clear and coherent, and his judgment/insight was fair.  (Id. at 91, 92, 93-94, 96-97.)

On December 6, 2014, petitioner was admitted to a mental health crisis bed on suicide

20

precaution in the Correctional Treatment Center; his GAF was 25 and he was prescribed psychotropic drugs.  (Id. at 99-101.)  Petitioner was housed in the crisis bed for six days; on discharge, his diagnosis remained Schizoaffective Disorder, with a GAF score of 50.  (Id. at 105.)  On December 8, 2014, the IDTT found that petitioner "requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder; serious to major impairment of functioning in most life areas; ritualistic or repetitive self-injurious/suicidal behavior; or refractory psychiatric symptoms."  (Id. at 123.)  Prior to this crisis bed placement, the record noted that petitioner had reported to clinic "presenting with self-report of suicidal ideation without a plan, anxiety, hopelessness/ helplessness, and voices telling him to 'end my life, just do it.'"  (Id.)  Petitioner also stated:  "I think I need a lot more help, I can't express how I feel, I feel down and out, I don't want to live, I need some counseling.  I want to be in EOP."  (Id.)  The IDTT noted that petitioner's "claims appear to be an attempt to deal with safety concerns," and he was not referred to EOP at that time.  (Id.)

On December 8, 2014, the psychologist listed petitioner's diagnosis as Schizoaffective, Bipolar Type, GAF 25.  (Id. at 129.)  Petitioner was feeling depressed, but denied current suicidal ideation; reported auditory hallucinations, but none in the last two days.  (Id.)  Petitioner showed "no delusional thought process but acknowledged moderate paranoia related to being imprisoned and charged with sexual offenses.  (Id.)  Insight and judgment were both noted as limited.  (Id.)  On December 8, 2014, the psychiatrist's note recorded petitioner as stating "I have safety concerns in the yard.  Medication works.  I feel depressed."  (Id. at 131.)  On December 9, 2014, the psychiatrist listed petitioner's diagnosis as Schizoaffective, Bipolar Type, GAF of 25, and noted "consider change of diagnosis upon discharge."  (Id. at 136.)  The psychiatrist's assessment was "[v]eracity of [auditory hallucinations] in question, as [petitioner] admits it is his own voice that he hears in his head.  High potential for exaggerating symptoms due to safety concerns related to his controlling offenses."  (Id.)  Petitioner's TABE score of 5.1 was noted.  (Id. at 131, 136, 137.)  Petitioner "received passing score on cognitive test," diagnosis mood disorder not otherwise specified, and current GAF of 27.  (Id. at 137.)  Petitioner was oriented, his thought process was "illogical, but goal directed," his thought content was noted as "paranoid ideations

1   present, but not grossly delusional, has occasional AH, has history of AH since age 18, no VH,"

2   his cognition was normal, mood mildly depressed, affect was mood congruent; and insight and

3   judgment were both limited.  (Id. at 138.)

4        On December 10, 2014, petitioner was discharged from the mental health crisis bed,

5   remaining in the CCCMS level of mental health care, psychotropic medications prescribed, with a

6   current GAF score of 55.  (Id. at 140.)  During the five day follow-up, mental health staff noted

7   petitioner was not suicidal, was attending to his activities of daily living, and on December 12,

8   2014, he reported he was "good," and was reading a book at the time of contact.  (Id. at 145.)

9   On December 16, 2014, mental health staff noted petitioner was cooperative, his "thoughts

10  appeared rational, non-delusional, and non-bizarre," his memory was intact, insight and judgment

11  were fair.  (Id. at 147-48.)  His diagnosis was listed as Schizoaffective Disorder, Bipolar Type by

12  history, GAF of 60.  (Id.)  On December 23, 2014, the mental health treatment plan listed

13  petitioner's two problems:  depression and psychosis (AH).  (Id. at 144, 149.)  Petitioner was

14  prescribed Depakote for mood instability and Risperdal for psychosis and remained at the

15  CCCMS level of care.  (Id. at 149, 152.)

16        *After Expiration of the Statute of Limitations Period:  2015 Records*

17        On March 4, 2015, mental health staff performed a ninety day suicide risk evaluation,

18  finding petitioner was at low risk.  (Id. at 155.)  His "thoughts appeared rational, non-delusional,

19  and non-bizarre," his memory was intact, insight and judgment were fair.  (Id. at 156.)  His

20  diagnosis remained Schizoaffective Disorder, Bipolar Type by history, GAF of 60.  (Id.)  On

21  March 16, 2015, petitioner's psychiatrist noted that petitioner's thought process was "goal

22  directed without any looseness of associations or flight of ideas, and his thought content included

23  "no perceptual disturbances and no delusions."  (Id. 159-60.)  Petitioner reported no auditory

24  hallucinations for over a year.  (Id. at 159.)

25        On May 16, 2015, petitioner was seen by his psychiatrist for follow-up; petitioner reported

26  he felt good, and the medication works well, denied any suicidal ideation, mood swings or racing

27  thoughts.  (Id. at 161.)  The psychiatrist noted petitioner's thought process was linear and logical,

28  he had no delusions, hallucinations or psychosis, and his diagnosis as Schizoaffective Disorder,

1    GAF 50.  (Id. at 161-62.)  He was prescribed Risperdal and Depakote.  (Id. at 161.)

2          On May 28, 2015, August 14, 2015, and September 3, 2015, petitioner's evaluation and

3    diagnosis remained the same, and the GAF was listed as 60.  (Id. at 165, 167, 170.)  On August

4    14, 2015, petitioner reported that he goes to school daily, denied problems with his concentration

5    in class, and kept in touch with his cousin and aunt.  (Id. at 167.)  On September 13, 2015,

6    petitioner was seen by the psychiatrist, who noted the same diagnosis, but a GAF of 58.  (Id. at

7    171.)  Petitioner's thought process was linear and goal-directed, no hallucinations, paranoia, or

8    delusions, his insight and judgment were both good, and his cognition was "grossly intact," and

9    petitioner was still taking Depakote and Risperdal.  (Id. at 172.)

10          On December 2, 2015, petitioner was evaluated for suicide risk and found the risk

11    remained low.  (Id. at 173-74.)  Petitioner reported some "ongoing occasional anxiety, which

12    appears to be due to his controlling offense and status as a sex offender."  (Id. at 174.)  The CSW

13    noted petitioner's attention and concentration appeared normal, his thought content was free of

14    bizarre and delusional material, his thought process was clear and coherent, and he denied

15    AH/VH.  (Id.)  The MHTS reflected the same diagnosis, Schizoaffective Disorder, and his GAF

16    was 60.  (Id. at 176.)

17          On December 8, 2015, petitioner's IDTT performed an annual review of petitioner's

18    mental health treatment plan and determined that petitioner did not need highly structured

19    inpatient psychiatric care and "unanimously agreed that there is no indication for a higher level of

20    care at this time."  (Id. at 181.)  Petitioner was currently prescribed Depakote and Risperdal.  (Id.)

21    It was determined that petitioner should remain at the CCCMS level of mental health care.  (Id. at

22    181-87.)  His diagnosis remained Schizoaffective Disorder, Bipolar Type, GAF of 60.  (Id. at

23    182.)

24          On December 17, 2015, petitioner remained on the same psychiatric medications, and

25    acknowledged he was taking his medications, was okay, and denied having any new problems.

26    (Id. at 189.)  He denied having mood swings.  (Id.)  The psychiatrist noted that petitioner's

27    thought process was linear and goal-directed, he had no auditory or visual hallucinations,

28    paranoia or delusions, his insight was good, his judgment was limited, and his cognition was

23

1  grossly intact.  (<u>Id.</u>)

2       On December 30, 2015, petitioner received a rules violation for possession of inmate

3  manufactured alcohol.  (<u>Id.</u> at 195.)  The Rules Violation Report:  Mental Health Assessment

4  form included the following:

5           Are there any mental health factors that would cause the inmate to
            experience difficulty in understanding the disciplinary process and
6           representing higher interests in the hearing that would indicate the
            need for assignment of a staff assistant?
7
            The inmate has a TABE score of 5.5 and has had several 115 hearings
8           in the past; therefore, he is experienced in the disciplinary process
            and is easily able to articulate his interests.  The inmate does not
9           display or endorse any developmental disability/cognitive or
            adaptive functioning deficits.
10

11  (<u>Id.</u> at 195.)  The CSW also noted that petitioner's "behavior was not influenced by his mental

12  illness, and he has been adequately coping with his reported mental health symptoms for several

13  years at the CCCMS level of care."  (<u>Id.</u> at 199.)  It was recommended that if petitioner was found

14  guilty, he be allowed to maintain his property, including his books, and a TV or radio to help

15  maintain his mental health stability.  (<u>Id.</u>)

16              *After Expiration of the Statute of Limitations Period:  2016 Records*

17       On February 29, 2016, the psychiatrist noted petitioner's "thought content was free of

18  bizarre and delusional material, does not report AH/VH.  Thought process was clear and coherent.

19  Judgment/Insight:  Intact/Fair."  (<u>Id.</u> at 191.)  Diagnosis was Schizoaffective Disorder, GAF of

20  60.  (<u>Id.</u>)  As of April 4, 2016, petitioner's psychotropic medications were Risperdal and

21  Depakote.  (<u>Id.</u> at 194.)  On May 26, 2016, the psychiatrist completed a mental heath referral

22  chrono noting that petitioner wanted off his medications.  (<u>Id.</u> at 192.)  Petitioner's psychotropic

23  medications were discontinued on June 22, 2016.  (<u>Id.</u> at 205.)

24              *After Expiration of the Statute of Limitations Period:  2017 Records*

25       On January 12, 2017, the CSW noted petitioner's request to be discharged from CCCMS

26  because he had been stable without psychotropic medications.  (<u>Id.</u> at 205.)  He had an IDTT

27  meeting on December 6, 2016, but was not discharged at that time because it had not been six

28  months since medications were discontinued, but he would be scheduled for another IDTT to

1   address whether discharge from the MHSDS would be appropriate.  (Id.)  Petitioner denied

2   hallucinations or suicidal ideation, and his thoughts appeared rational, nondelusional and

3   nonbizarre.  (Id.)  His diagnosis was listed as Schizoaffective Disorder, Bipolar Type by history –

4   in remission, GAF of 70, and TABE 6.2.  (Id.)

5          On April 11, 2017, petitioner's mental health IDTT recommended discharging petitioner

6   from the MHSDS because he was able to maintain stability without psychotropic medications for

7   over six months.  (Id. at 206.)  His thought process was noted as "linear/goal directed," and his

8   thought content was "appropriate to situation," his insight was noted as "understands problems or

9   need for treatment," and his judgment was "good/sound."  (Id. at 207.)  His intellectual

10  functioning appeared "average intelligence."  (Id.)

11               *After Expiration of the Statute of Limitations Period:  2019 Records*

12         On April 30, 2019, petitioner was referred to mental health by custody because petitioner

13  appeared anxious/nervous.  (Id. at 214.)  Petitioner was previously seen on April 24, 2019, after

14  he reported suicidality following "a bad day," but was no longer feeling suicidal and was feeling a

15  bit better.  (Id.)  Petitioner was under more stress lately and having difficulties sleeping.  (Id.)

16  The psychologist noted that there was no evidence of loosening of associations, cognitive

17  disorganization or racing thoughts, delusions, or significant paranoia.  (Id.)  She noted petitioner's

18  thinking was goal-directed and his thought content was within normal limits, his judgment and

19  insight were adequate.  (Id.)  Petitioner was continued at the general population level of care.

20  (Id.)

21               3.      Discussion

22         Review of petitioner's mental health records demonstrate that he suffered from serious

23  mental health symptoms toward the end of the limitations period, in late 2013.  Petitioner was

24  diagnosed with Schizoaffective Disorder - Depressed and was prescribed psychotropic

25  medications.  There is, however, some question as to the severity of petitioner's symptoms at that

26  time, given mental health professional's concerns that petitioner might have been exaggerating

27  his symptoms due to his safety concerns based on his sex offender status, as well as petitioner's

28  later concession that he claimed to be suicidal but was not.

25

1    In order to obtain equitable tolling, petitioner must demonstrate that his mental illness

2  made it impossible for him to file his habeas petition.  Bills, 628 F.3d at 1100-01.  Here, there is

3  no competent evidence that petitioner suffered from a severe mental illness that was the but-for

4  cause of his failure to file his federal habeas petition during the first ten months the limitations

5  period.  By November 23, 2013, 312 days of the limitations period had expired, and petitioner

6  was not yet placed in the CDCR's MHSDS.

7    Once petitioner was evaluated, he was placed in the CCCMS level of mental health care,

8  where he remained until he was discharged from the MHSDS on April 11, 2017.  "[A]ssignment

9  to the CCCMS level of care suggests that petitioner was able to function despite his mental

10  problems."  Washington v. McDonald, No. 2010 WL 1999469, at *2 (C.D. Cal. Feb. 19, 2010),

11  report and recommendation adopted, 2010 WL 1999465 (C.D. Cal. Feb. 24, 2010).  This is

12  because "[t]he CCCMS level of care is for inmates whose symptoms are under control or in

13  partial remission and can function in the general prison population, administrative segregation, or

14  segregated housing units."  Coleman v. Schwarzenegger, 922 F. Supp. 2d 882, 903 n.24 (E.D.

15  Cal. 2009).

16    In addition, although petitioner had a GAF of 23 at the time he presented on November

17  23, 2013, two days later, his GAF was listed as 60, reflecting only moderate symptoms.[7]  Indeed,

18    ───────────────

19  [7]  In 2013, the American Psychiatric Association discontinued use of the GAF scale, noting its "conceptual lack of clarity" and "questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013).  But

20  the Ninth Circuit continues to review GAF scores as a "rough estimate of an individual's psychological, social and occupational functioning used to reflect the individual's need for

21  treatment."  Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (citation omitted) (finding GAF scores are relevant in assessing social security disabilities); see also Dowdy v. Curry, 617 F.

22  App'x 772 (9th Cir. 2015) (affirming district court's denial of equitable tolling, finding that "medication adequately controlled Dowdy's mental impairment" during the relevant time frame,

23  and his GAF score "indicated only moderate symptoms of impairment.")  Other district courts in the Ninth Circuit consider GAF scores in deciding whether to grant equitable tolling based on

24  mental impairment.  See, e.g., Aubrey v. Biter, 2019 WL 994399 (C.D. Cal. Jan. 31, 2019)

25  (finding prisoner was not entitled to equitable tolling despite schizoaffective disorder diagnosis, where GAF scores from 51-60 reflected moderate symptoms, and psychotropic medications

26  improved the prisoner's symptoms); Caetano v. Sexton, 2018 WL 585602, at *6 (E.D. Cal. Jan.

27  29, 2018), report and recommendation adopted, 2018 WL 10456558 (E.D. Cal. Mar. 21, 2018) (finding prisoner not entitled to equitable tolling despite chronic paranoid schizophrenia

28  diagnosis, where all but two GAF scores were between 55 and 67 and prisoner's mental health

for most of the time during his CCCMS placement, his GAF score was in the moderate range. GAF scores are not dispositive, but petitioner's GAF scores do not demonstrate that he was so impaired that he could not understand the need to seek habeas relief and to take steps to seek habeas relief. Aubrey v. Biter, 2019 WL 994399, at *5-6 (C.D. Cal. Jan. 31, 2019) (finding prisoner was not entitled to equitable tolling despite schizoaffective disorder diagnosis, where GAF scores from 51-60 reflected moderate symptoms, and psychotropic medications improved the prisoner's symptoms); Sigmon v. Kernan, 2009 WL 1514700 at *9 (C.D. Cal. May 27, 2009) (finding GAF scores between 55 and 66 "indicate only mild to moderate impairment" and do not provide a basis for equitable tolling; Lawless v. Evans, 545 F. Supp. 2d 1044, 1049 (C.D. Cal. 2008) (finding claim for equitable tolling based on mental incompetence not supported by GAF score of 65). The two day period petitioner's GAF score was 23 would not be sufficient for tolling purposes given the lengthy delay at issue here.

Moreover, throughout his CCCMS placement, most of the records indicate petitioner's thoughts were linear and logical, his thought processes were well organized, and he was not delusional or hallucinating. Petitioner noted that he regularly wrote to his aunt and cousin, and at one point the mental health clinician noted petitioner was reading when approached at his cell, and another clinician insisted that petitioner be allowed to bring his books and TV with him if he was found guilty of a rules violation and placed in administrative segregation. These records clearly demonstrate that petitioner's mental illness was not so severe that it prevented petitioner from filing a timely federal habeas petition or seeking assistance in doing so. See, e.g., Yeh, 751 F.3d at 1078 (although prisoner had history of mental illness, it was not severe enough to cause his delay because he repeatedly "sought administrative and judicial remedies, and throughout these proceedings showed an awareness of basic legal concepts").

On one occasion, after the limitations period had run, petitioner was admitted to a mental health crisis bed on suicide precaution for six days, with a GAF of 25. (ECF No. 40 at 99-105.) By December 10, 2014, when he was discharged from the crisis bed back to the CCCMS level of

status continued to improve after limitations period expired.)

1    care, his GAF had returned to 55.  (Id. at 140.)

2          Further, the records reflect no suicide attempts; rather, the records reflect that on the two

3    occasions when petitioner reported he had suicidal thoughts, he sought mental health care.

4    Although petitioner did not have a high school education, and his early TABE score was 5.1, the

5    mental health records noted petitioner's cognition was normal or grossly intact.  (Id. at 138, 172,

6    189.)  A pro se petitioner's illiteracy is not an extraordinary circumstance sufficient to justify

7    equitable tolling.  Stancle v. Clay, 692 F.3d 948, 952, 959 (9th Cir. 2012) (finding prisoner's

8    second grade education and low level intelligence did not constitute "a mental impairment that

9    made it impossible to meet the filing deadlines under the totality of the circumstances, including

10   reasonably available access to assistance."), cert. denied, 568 U.S. 1109 (2013).

11         After carefully considering the record, for the reasons stated herein, the Court finds that

12   petitioner is not entitled to equitable tolling during the limitations period based on mental illness.

13   While petitioner demonstrated that he suffered from a serious mental illness during the limitations

14   period, he failed to show that such illness made it impossible to meet the deadline under the

15   totality of circumstances, including reasonably available access to assistance.  See Bills, 628 F.3d

16   at 1100; Smith, 953 F.3d at 582.

17         In any event, petitioner did not file the instant habeas petition until November 2020, six

18   years after the statute of limitations had expired.  Petitioner also failed to demonstrate his

19   diligence throughout the entire time it took petitioner to file his federal petition.  See Smith, 953

20   F.3d at 582 (finding diligence required before, during and after the existence of an "extraordinary

21   circumstance").  Thus, even assuming petitioner's Schizoaffective Disorder and subsequent

22   addition of Bipolar Type diagnosis precluded his timely filing within the limitations period or

23   even through his placement in the CCCMS level of care, the records demonstrate

24   that this accounts for only a portion of the six years it took petitioner to file his federal petition.

25   Petitioner was successfully taken off psychotropic medications on June 22, 2016, and his mental

26   illness went into remission by January 12, 2017.  Petitioner was discharged from the MHSDS on

27   April 11, 2017.  By then, his GAF was 70, and the IDTT found petitioner's thought process was

28   linear/goal directed, his thought content was appropriate to situation, his judgment was

1   good/sound, and his insight was noted as "understands problems or need for treatment." (ECF

2   No. 40 at 207.)  The IDTT noted petitioner's intellectual functioning "appeared average

3   intelligence." (Id.)  Therefore, petitioner failed to demonstrate his diligence during the three and

4   a half years that it took petitioner to file his federal petition once his mental illness was in

5   remission and he was removed from the MHSDS.

6          Accordingly, even if petitioner's motion to vacate judgment was timely filed, the Court

7   concludes that petitioner's mental health was not so impaired throughout the limitations period or

8   during the subsequent period after petitioner's mental illness was in remission and he was

9   discharged from the MHSDS that it constitutes extraordinary circumstances that caused his late

10  federal petition despite his diligence.  Petitioner is therefore not entitled to equitable tolling for

11  the lengthy delay in bringing his federal habeas petition.

12          C.     No Evidentiary Hearing Required

13         The Court finds that the record is sufficiently developed with regard to petitioner's mental

14  impairments for the Court to make a recommendation regarding equitable tolling, as petitioner

15  has filed petitioner's mental health records for the relevant time period.  See Roberts, 627 F.3d at

16  773 (petitioner's "extensive medical records" was an amply developed record upon which district

17  court could find an evidentiary hearing unnecessary).  Thus, no evidentiary hearing is required.

18  V.     CONCLUSION

19         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's motion to vacate

20  judgment (ECF No. 40) be denied.

21         These findings and recommendations are submitted to the United States District Judge

22  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

23  after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

26  objections shall be filed and served within fourteen days after service of the objections.  The

27  parties are advised that failure to file objections within the specified time may waive the right to

28  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 13, 2024

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/meza2316.60b